RAWLINSON, Circuit Judge,
concurring in part, and dissenting in part:
I agree in principle that an infant may be subjected to persecution. However, I do not agree that the facts of this case compel a conclusion that Petitioner Juan Ubaldo Mendoza-Pablo was subjected to persecution as an infant. I respectfully dissent.
Mendoza-Pablo was informed by his mother that he was born several weeks premature, and was malnourished because of the family’s forced retreat into the mountains, where food was scarce. When Mendoza-Pablo was approximately three months old, Mendoza-Pablo’s family fled to Mexico. In Mexico, Mendoza-Pablo was unable to attend school and experienced difficulty in finding employment. *1316 Mendoza-Pablo also reported frequent illness and recurring nightmares.
When asked why he was seeking asylum, Mendoza-Pablo responded, “I’m applying for asylum because I don’t have papers or anything ... I don’t have where to livefsic]. I don’t have anywhere to go....” [1] When asked what would happen if he returned to Guatemala, Mendoza-Pablo replied that he “could be killed or other things that happened to[his] family could also happen to [him].” However, when asked the identity of his potential killer(s), Mendoza-Pablo admitted that he did not actually have any ideas as to who might want to kill him. He speculated that the indigenous people “like [him]” would want to kill him, but then conceded that he was not identifiable as indigenous from his appearance.
Mendoza-Pablo never articulated a concrete reason to support his asserted fear of being killed. When the subject was raised for the final time during the hearing, the best explanation he could muster was:
Well within me I just feel that if I were to be there that I am an unknown person, that someone could kill me there. It’s just things that I think about and it’s something that I am afraid of.
Well I’m just afraid that because I’m someone that’s unfamiliar, an unknown person, that someone would kill me or perhaps someone burn me, or perhaps something like that could happen to me although I have no memory of all of that. I don’t remember any of that.
(Emphases added).
The Immigration Judge (IJ) credited Mendoza-Pablo’s testimony, but held that the testimony was not sufficient to meet Mendoza-Pablo’s burden of establishing either past persecution or a well-founded fear of future persecution on account of a protected ground. The IJ based his finding on the following observations:
1. Mendoza-Pablo’s claim of psychological trauma was not supported by any evidence.
2. Mendoza-Pablo did not suffer persecution as defined by the BIA in Matter of Chen, 20 I & N Dec. 16 (BIA 1989). The IJ specifically noted that Mendoza-Pablo never personally witnessed any of the atrocities inflicted upon his family members and that Mendoza-Pablo was never personally confronted by the persecutors.
3. The fact that Mendoza-Pablo witnessed his mother crying does not rise to the level of persecution.
4. Mendoza-Pablo presented no evidence of any negative residual effect of the three months he spent in the mountains as an infant.
5. Mendoza-Pablo’s expressed fear that he would be killed if he returned to Guatemala was objectively unreasonable in view of Mendoza-Pablo’s inability to identify anyone who would have reason to kill him.
6. The persecution of Mendoza-Pablo’s family took place over twenty years ago and Mendoza-Pablo presented no evidence that anyone was seeking to harm Mendoza-Pablo after the expiration of twenty-plus years.
7. Peace accords have been negotiated between the factions previously en *1317 gaged in civil war in Guatemala and the civil war ceased long ago.[2]
The Board of Immigration Appeals (BIA) affirmed the IJ’s denial of relief. The BIA noted that Mendoza-Pablo had absolutely no recollection of the events that formed the basis for his claim of persecution. The BIA explicitly upheld the IJ’s determination that Mendoza-Pablo failed to establish that he was the victim of past persecution. The BIA acknowledged that Mendoza-Pablo’s persecution claim was predicated primarily on “alleged emotional harm ...” Nevertheless, the BIA agreed with the IJ that the lack of objective evidence or expert testimony in support of the claimed harm rendered Mendoza-Pablo’s claim without merit.
The BIA also agreed with the IJ that Mendoza-Pablo’s “second-hand exposure to war” where he “never witnessed any atrocities or was ever personally challenged or confronted,” was insufficient to establish past persecution.
Finally, the BIA affirmed the IJ’s ruling that there was insufficient evidence in the record to support a finding that Mendoza-Pablo had an objectively reasonable fear of future persecution. The persecution of Mendoza-Pablo’s parents was too remote to establish an objectively reasonable fear of future persecution, and Mendoza-Pablo’s claims regarding how he would be injured if he returned to Guatemala were entirely speculative.
It is important to keep in mind that our review of the decision of the Board of Immigration Appeals (BIA) is extremely limited. In order for us to reach a different conclusion, the record must compel a different result. See INS v. Elias-Zacarias, 502 U.S. 478, 484, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); see also Padash v. INS, 358 F.3d 1161, 1165 (9th Cir.2004). So long as there is substantial evidence in the record supporting the BIA’s decision, that decision must be upheld. See id. Such record evidence supports the BIA’s decision in this case.
“Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive.... ” Gormley v. Ashcroft, 364 F.3d 1172, 1176 (9th Cir.2004) (citation and internal quotation marks omitted). Our precedent generally involves some physical harm to the petitioner to support a claim of past persecution. See Nahrvani v. Gonzales, 399 F.3d 1148, 1153 (9th Cir.2005) (“Physical violence inflicted against an individual often meets the requirement of severity that characterizes persecution....”) (citations, alteration, and internal quotation marks omitted). As the BIA stated in its decision, Mendoza-Pablo offered no evidence of physical harm. In addition, Mendoza-Pablo’s claim of emotional harm was not substantiated by specific testimony, objective evidence or expert testimony. See Nahrvani, 399 F.3d at 1154 (observing that denial of asylum claim was warranted because petitioner failed to substantiate his claim); see also Ouk v. Gonzales, 464 F.3d 108, 111 (1st Cir.2006) (holding that petitioner failed to establish link between emotional harm and alleged persecution). Mendoza-Pablo’s description of his struggles in Mexico do not establish past persecution. See Gormley, 364 F.3d at 1178-80 (noting that economic disadvantage does not constitute persecution). Similarly, Mendoza-Pablo’s vague testimony describing his fear of future persecution was insufficient. See Lolong v. Gonzales, 484 *1318 F.3d 1173, 1179 (9th Cir.2007) (en banc) (rejecting a “general, undifferentiated claim” of future persecution).
The cases cited by the majority are easily distinguished. Benyamin v. Holder, 579 F.3d 970 (9th Cir.2009) involved an infant girl who was subjected to female genital mutilation, a practice we have described as a permanent disfigurement of the female genitalia with “serious, potentially life-threatening complications.... ” Id. at 972 (citation omitted). Unlike Mendoza-Pablo, the infant in Benyamin was directly subjected to a physical injury with permanent effects, rising to the level of persecution. See id.[3]
The cases cited by the majority stand for the unremarkable proposition that age is a factor to be considered in determining whether persecution has occurred. See Hemandez-Ortiz v. Gonzales, 496 F.3d 1042 (9th Cir.2007); see also Liu v. Ashcroft, 380 F.3d 307, 314 (7th Cir.2004); Jorge-Tzoc v. Gonzales, 435 F.3d 146, 150 (2d Cir.2006); Abay v. Ashcroft, 368 F.3d 634, 640 (6th Cir.2004). These cases in no way undermine the administrative resolution of Mendoza-Pablo’s asylum claims. Indeed, both the IJ and the BIA expressly considered Mendoza-Pablo’s age at the time of the asserted persecution.
The best the majority can do is speculate regarding the likelihood that the “deprivations” experienced by Mendoza-Pablo “would have some deleterious and long-lasting effects.... ” Majority Opinion, p. 1315. The majority cites Brucaj v. Ashcroft, 381 F.3d 602 (7th Cir.2004), for the proposition that the credible testimony of the applicant may sustain his burden of proof. See Majority Opinion, p. 1315 n.6. I have no quarrel with the expressed proposition. But the proposition is no substitute for evidence. And the evidence in this case, including Mendoza-Pablo’s testimony, contains not a shred of proof of any lingering effects of the deprivations he suffered. Faced with this lack of evidence, it is incomprehensible that the majority purports to be compelled to reverse the BIA’s ruling. I cannot agree.

. The majority ignores this testimony and relies on Mendoza-Pablo’s later testimony that he “thought” the time spent in the mountains "jeopardized” him. Majority Opinion, p. 1311 n.2. However, Mendoza-Pablo admitted that he had absolutely no memory of the time spent in the mountains.

. The majority counters that "many” of these facts relate to a fear of future persecution. Majority Opinion, p. 1312 n.3. Even so, the majority fails to explain why the findings that address a lack of past persecution do not constitute substantial evidence.

. The majority responds by citing Knezevic v. Ashcroft, 367 F.3d 1206, 1211 (9th Cir.2004) for the proposition that persecution "can include inter alia, severe harassment, threats, violence and discrimination; forced institutionalization; violence against family, and seizure of family land and ration card; and mental, emotional and psychological harm.” Majority Opinion, p. 1313 n.4 (parentheses and internal quotation marks omitted). The flaw in the majority’s argument is that the person seeking asylum must prove the persecution. See Knezevic, 367 F.3d at 1211, and Mendoza-Pablo failed to do so.